# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VAZQUEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:17-cv-1646 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MIGUEL VAZQUEZ AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Miguel Vazquez asserts he is entitled to benefits under Titles II and XVI the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in assessing in evaluating the medical evidence. Because the ALJ failed to identify specific and legitimate reasons rejecting the opinions of Plaintiff's treating physician, the decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

On May 12, 2014, Plaintiff filed applications for disability, alleging that his disability began March 1, 2011. (Doc. 9-4 at 63) The Social Security Administration denied the applications at the initial level on December 10, 2014, and upon reconsideration on March 13, 2015. (*See generally* Doc. 9-4) After requesting a hearing, Plaintiff testified under oath before an ALJ on February 1, 2017. (Doc. 9-3 at 15) The ALJ found Plaintiff was not disabled as defined by the Social Security Act, and

1

issued an order denying benefits on February 15, 2017. (Doc. 9-4 at 63-74) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on November 7, 2017. (Doc. 9-3 at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial evidence and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Evidence**

On March 30, 2011, Plaintiff was seventeen years old and was voluntarily admitted to Vista Del Mar Hospital "for treatment of psychosis and suicidal and homicidal ideation." (Doc. 9-8 at 3, 6) He reported that he last used drugs on January 1, 2011, and the substances included "cocaine, marijuana, and methamphetamine." (*Id.* at 6) Plaintiff's symptoms included "anxiety, insomnia, poor appetite with 5 to 10 pounds weight loss, auditory hallucinations commanding suicide and homicide towards his family, and suicidal and homicidal ideation." (*Id.*) Dr. Steven Ruths opined that Plaintiff's immediate, recent, and remote memory were "good," because Plaintiff could repeat three mentioned objects, recall what he ate for his last meal, and "knowing his date of birth." (*Id.* at 6-7) Plaintiff received psychopharmacotherapy, including Seroquel and Haldol, and was discharged on April 15, 2011. (*Id.* at 3) At that time, Dr. Ruths diagnosed Plaintiff with "[p]yschotic disorder, not otherwise specified," "[r]ule out schizophrenia," and gave Plaintiff a GAF score of 40.[1] (*Id.* at 4)

In June 2014, Plaintiff began seeking services from the Kern County Mental Health Department

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score between 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)." *DSM-IV* at 34.

"for auditory and visual hallucinations." (Doc. 9-8 at 10) Although Plaintiff was then twenty years old, his father accompanied him and "provide[d] most of the information" during the initial interview with Maria Lara, MFT. (*Id.*) His father stated that until Plaintiff was seventeen years old, he "was involved in sports and maintained a good grade point average," but then suffered a "psychotic break." (*Id.*) Plaintiff's reported symptoms included: auditory hallucinations, depressed/low mood, insomnia, and substance abuse. (*Id.* at 11, 23) Ms. Lara noted that once his father left the room, Plaintiff reported he had been using marijuana, spice, meth, and ecstasy. (*Id.* at 11) However, the toxicology test was negative for all substances, and his father insisted that his son did not use drugs, and instead was only mentally ill. (*Id.*) Ms. Lara noted the toxicology results "gave father's version some credibility." (*Id.* at 13) Ms. Lara opined Plaintiff's ability to concentrate was impaired, he was inattentive, and he had a poor memory. (*Id.* at 20) She believed Plaintiff would "benefit from psychiatric evaluation and medication management." (*Id.* at 23)

Dr. Komal Desai performed the psychiatric evaluation on June 24, 2014. (Doc. 9-8 at 25-33) Dr. Desai noted Plaintiff was "guarded" and "very vague" in responding to questions, and his father "gave all the information." (*Id.* at 25, 27) He believed Plaintiff "appear[ed] to have cognitive problems, like poor memory/concentration." (*Id.* at 25) Dr. Desai noted Plaintiff "denie[d] even trying drugs," though it contradicted Plaintiff's medical records and juvenile history. (*Id.* at 26) He indicated Plaintiff was not currently using drugs or alcohol. (*Id.* at 33) Dr. Desai opined Plaintiff had a poor immediate, recent, and remote memory; below average intelligence; impaired ability to concentrate; and was inattentive. (*Id.* at 29) He noted Plaintiff's diagnosis history included: psychotic disorder, not otherwise specified; depressive disorder, not otherwise specified; cannabis dependence; alcohol abuse; and amphetamine abuse. (*Id.* at 30) Dr. Desai prescribed Seroquel in the amount of 100mg and recommended counseling. (*Id.* at 32-33)

In July 2014, Plaintiff told Dr. Desai that he was taking the Seroquel and had fewer auditory hallucinations. (Doc. 9-8 at 45) Plaintiff's father reported that he had "been giving him 200mg of Seroquel," but it was "not helping him sleep." (*Id.* at 50) When Plaintiff's father left the room, Plaintiff also reported that he was taking marijuana every day, and had last used speed two months before. (*Id.* at 45) Dr. Desai indicated he discussed "substance abuse and long term effects causing

mood and psychotic symptoms" with Plaintiff and his father. (*Id.* at 50) He increased Plaintiff's prescription for Seroquel to 300mg. (*Id.* at 35, 50)

The following month, Plaintiff's father again reported that his son needed more medication, because Plaintiff continued to be irritable and have auditory hallucinations. (Doc. 9-8 at 43) Dr. Desai opined Plaintiff had a "moderate" response to treatment, and increased the Seroquel to 400mg and added Vistaril for Plaintiff's anxiety. (*Id.* at 35, 42-43)

In September 2014, Dr. Desai indicated Plaintiff was doing "better than last visit, but still [had] some difficulty sleeping," and continued to report auditory hallucinations. (Doc. 9-8 at 36) Dr. Desai noted Plaintiff had "fair" medication compliance, and was not currently using any substances such as alcohol or marijuana. (*Id.*) Plaintiff exhibited cooperative behavior with intermittent eye contact, and "his mood/irritability [was] better." (*Id.* at 36-37) Dr. Desai opined Plaintiff had fair insight, fair judgment, poor memory, and impaired concentration/ attention. (*Id.* at 36) According to Dr. Desai, Plaintiff had a "mild" disability, and would be able to work with support. (*Id.* at 37) He continued to believe Plaintiff had "some cognitive issues," which "could be chronic." (*Id.*)

Dr. Margaret Pollack reviewed records on December 9, 2014. (Doc. 9-4 at 7) She noted that Plaintiff had allegations of bipolar disorder, paranoid schizophrenia, and auditory hallucinations. (*Id.*) Dr. Pollack noted that in September 2014, Plaintiff "demonstrate[d] improvement [with] euthymic mood," though he had a "blunted affect" and continued to report auditory hallucinations. (*Id.*) According to Dr. Pollack, the record indicated Plaintiff's response to treatment was "moderate to fair… despite some remaining cognitive issues." (*Id.*) Dr. Pollack opined Plaintiff was "[n]ot significantly limited" with the "ability to carry out very short and simple instructions." (*Id.* at 9) She determined Plaintiff had moderate limitations with the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; sustain an ordinary routine without special supervision; interact appropriately with the public, co-workers, supervisors, and peers; and adaptation. (*Id.* at 9-10) Dr. Pollack concluded that, assuming sustained remission from drug and alcohol abuse, Plaintiff was capable of performing simple, repetitive tasks with little public contact "due to irritability." (*Id.* at 7)

Plaintiff visited Omni Family Health on December 10, 2014, beginning medication

management with psychotherapy. (Doc. 9-8 at 55) Dr. Dashrath Patel noted that Plaintiff described "moderate" symptoms, which included hearing voices that told him "to hurt self or others," and feeling "paranoid like poeple (sic) are watching him." (*Id.*) Dr. Patel noted Plaintiff's father did not believe the Seroquel and Vistaril work "working enough" because Plaintiff was "still having trouble sleeping." (*Id.* at 56) Dr. Patel diagnosed Plaintiff with "[p]aranoid type schizophrenia, unspecified state." (*Id.*) He discontinued Plaintiff's prescription for Vistaril and began Trazodone, and directed Plaintiff to return in two months. (*Id.*)

In February 2015, Dr. Patel noted that Plaintiff did not shower and his grooming was poor. (Doc. 9-8 at 52, 90) Plaintiff continued to hear voices and talk to himself, though he was taking medication as prescribed. (*Id.*) He gave Plaintiff a GAF score of 45.[2] (*Id.* at 53, 91) Dr. Patel increased Plaintiff's prescription for Seroquel to two tablets of 400mg. (*Id.* at 52, 91) He also added Risperdone to the medication plan. (*Id.*)

Dr. Patel completed an evaluation form on February 26, 2015. (Doc. 9-8 at 57-61) He noted was treating Plaintiff for "paranoid type schizophrenia" with medication that included Trazodone, Seroquel, and Risperdone. (*Id.*) According to Dr. Patel, Plaintiff had a disheveled appearance and poor hygiene. (*Id.*) He indicated Plaintiff exhibited guarded, irritable, and apathetic behavior; flat affect; anxious mood; disoriented cognitive functioning; moderately impaired concentration; and impaired immediate and recent memory. (*Id.* at 57-58) Dr. Patel also believed Plaintiff had below average intelligence and impaired judgment. (*Id.* at 58-59) He did not complete the section discussing alcohol and drug abuse, instead requesting that it be forwarded "to [a] substance use specialist." (*Id.* at 59) He opined Plaintiff had a "poor" ability to understand, remember, and carry out complex instructions; maintain concentration, attention and pace; complete a normal workday and workweek without interruptions from psychologically based symptoms; and interact appropriately with the public, supervisors, and co-workers. (*Id.* at 60) In addition, Dr. Patel indicated Plaintiff had a "fair" ability to understand, remember, and carry out simple instructions and perform activities within a schedule. (*Id.*) Further, Dr. Patel believed Plaintiff was not capable of managing funds in his own best interest. (*Id.*)

---

[2] A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV* at 34.

| | |
|---|---|
| 1 | In May 2015, Dr. Patel noted that Plaintiff had been taking his medication "off and on." (Doc. |
| 2 | 9-8 at 87) In addition, Dr. Patel noted his reported symptoms included not sleeping, talking to himself, |
| 3 | hearing things, seeing things, and getting aggressive. (*Id.*) He opined Plaintiff made "[m]inimal |
| 4 | progress," and counseled Plaintiff on the "[i]mportance of compliance with [the] chosen treatment." |
| 5 | (*Id.* at 88) |
| 6 | In August 2015, Plaintiff had an appointment with Dr. Patel, who noted that Plaintiff's father |
| 7 | reported Plaintiff became "more aggressive and … verbally abusive towards his dad." (Doc. 9-8 at 84) |
| 8 | Plaintiff took his mediation "only 2 to 3 times a day;" and he continued to talk to himself, act out to |
| 9 | voices, and not shower daily. (*Id.*) Dr. Patel opined Plaintiff had not made any progress, and added |
| 10 | injections of Invega Sustenna to Plaintiff's prescriptions. (*Id.* at 85) |
| 11 | The following month, Plaintiff returned to Omni Family Health. (Doc. 9-8 at 81) He had been |
| 12 | taken to the emergency room because "he was feeling stiff and drooling." (*Id.*) Plaintiff "was |
| 13 | prescribed cogentin" and reported he was "doing better," was "less aggressive" and took a shower |
| 14 | "every other day." (*Id.*) However, he continued to be "fidgety and restless, and ha[d] some stiffness." |
| 15 | (*Id.*) Benztropine and Propranolol were added to Plaintiff's treatment plan, and his prescription for |
| 16 | Invega Sustenna was reduced from 234mg to 117mg. (*Id.*) |
| 17 | Dr. Asarulislam Syed performed a behavioral health evaluation for Plaintiff at Omni Family |
| 18 | Health in February 2016. (Doc. 9-8 at 77-80) Dr. Syed noted that Plaintiff was taking his medication as |
| 19 | prescribed. (*Id.* at 78) He determined that Plaintiff was "fully alert and oriented to person, place and[] |
| 20 | time," and he did not exhibit any abnormal involuntary movements. (*Id.* at 77) In addition, Dr. Syed |
| 21 | observed: |

> Plaintiff has average grooming, is fairly interactive, exhibits some apathy and has a passive attitude. Speech is of a normal rate and tone. Thought processes show some thought blocking but are fairly goal directed. Ambivalence noted. Is passively communicative and shows little spontaneity. There is obvious thought blocking and some distractibility is noted. There is no flight of ideas or loosening of associations. Thought content reveals no delusions. There is poverty of thought content. Has a past history of Auditory Hallucinations. No command hallucinations present. There is no evidence at present of any grandiosity. No evidence of any morbid preoccupation. Cognition is LIMITED. Working memory, social cognition, reasoning and problem solving skills are fair. Memory function FAIR.

(*Id.*, emphasis in original) He opined Plaintiff's symptoms for paranoid schizophrenia were "moderate"

and his condition was stable. (*Id.* at 78-79) Dr. Syed prescribed Wellbutrin and Ativan, for Plaintiff to take "as needed" for anxiety or agitation. (*Id.*)

At follow-up appointments in 2016, Dr. Syed noted Plaintiff was taking his medication as prescribed and opined he was stable. (Doc. 9-8 at 70, 74) Plaintiff continued to exhibit "a passive attitude" and "some thought blocking." (*Id.* at 69, 73) Dr. Syed again opined Plaintiff had a limited cognition and fair "[w]orking memory, social cognition, reasoning, and problem solving skills." (*Id.*) Although Plaintiff had "poverty of thought content," he did not have any delusions. (*Id.*) In addition, Dr. Syed opined Plaintiff's memory function was fair. (*Id.* at 69) He continued Plaintiff on the previous psychiatric prescriptions for Benztropine, Propranolol, Invega Sustenna, Wellbutrin, and Ativan. (*Id.* at 70-71, 74-75)

Dr. Syed completed a medical source statement on January 17, 2017. (Doc. 9-8 at 93-95) He noted that Plaintiff was diagnosed with paranoid schizophrenia. (*Id.* at 93) Dr. Syed opined Plaintiff had moderate limitations with understanding and remembering "short, simple instructions," and a marked limitation with carrying out such instructions. (*Id.*) He indicated Plaintiff had a marked limitation with understanding and remembering detailed instructions, and an extreme limitation with carrying out detailed instructions. (*Id.*) In addition, Dr. Syed believed Plaintiff had marked limitations with interacting with the public, supervisors, and co-workers. (*Id.* at 94) Further, he opined Plaintiff had extreme limitations with making "judgments on simple work-related decisions," responding appropriately to work pressures, and responding "appropriately to changes in a routine work setting." (*Id.* at 93-94) Dr. Syed noted that Plaintiff had "severe limitations" with social interaction, poor coping skills, "marked poverty of thought content" and demonstrated apathy. (*Id.* at 94) Dr. Syed concluded Plaintiff's limitations were "[n]ot related to drugs or alcohol." (*Id.*)

**B.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of March 1, 2011. (Doc. 9-4 at 66) At step two, the ALJ found Plaintiff had the following severe impairments: drug abuse, alcohol abuse, schizophrenia, and bipolar disorder. (*Id.*) The ALJ opined, "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work

activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." (*id.*) At step three, the ALJ determined these impairments did not meet or medically equal a Listing. (*Id.* at 67-68) Next, the ALJ found:

> If the claimant stooped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine work with no more than occasional public contact.

(*Id.* at 25) Based upon this RFC, the ALJ concluded Plaintiff would be able to perform "a significant number of jobs in the national economy" if he stopped abusing drugs and alcohol. (*Id.* at 73) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 74)

## **DISCUSSION AND ANALYSIS**

Plaintiff contends the ALJ erred in rejecting the opinion of his treating physician, Dr. Syed. (Doc. 16 at 5-12) According to Plaintiff, "the ALJ failed to articulate sufficient reasons" to reject the opinion. (*Id.* at 11) On the other hand, Defendant asserts that "the ALJ properly rejected Dr. Syed's opinion as inadequately supported and inconsistent with the overall medical evidence." (Doc. 18 at 5, emphasis omitted).

**A.    The ALJ's Evaluation of the Medical Record**

When evaluating the evidence from medical professionals, three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A treating physician's opinion is not binding upon the ALJ, and may be discounted another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining

9

professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Plaintiff contends the ALJ erred in rejecting the limitations identified by Dr. Syed, which conflicted with the opinions of Dr. Pollack. Given the conflicting opinions, the ALJ was required to set forth specific and legitimate reasons to support her rejection of Dr. Lopez's opinions. *See Lester*, 81 F.3d at 830.

The ALJ explained the weight given to the opinions of Dr. Syed as follows:

> Dr. Asarulislam Syed, also from Omni Family Health, completed a medical source statement, finding marked to extreme limitations due to paranoid schizophrenia. He also opined that the claimant's limitations are not related to drugs or alcohol (Exhibit B7F). This opinion is also given little weight because it is not consistent with the medical record. The medical record show that claimant's conditions are exacerbated by longstanding substance use, as demonstrated by his March 2011 hospitalization. Moreover, the fact that the claimant's reported less symptoms when he denied using substance indicates that drugs and alcohol caused or, at least contributes, to his mental condition.

(Doc. 9-4 at 72) In addition, the ALJ indicated she gave "great weight" to the opinion of Dr. Pollack, finding it was "supported by the medical evidence, including the more treatment notes showing improved mood and grooming, less hallucinations with reduced or short periods of abstinence." (*Id.* at 71-72)

### 1. Consistency with the medical record

The Ninth Circuit determined an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)

10

(emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ rejected the conclusions of Dr. Syed, finding the opinion[3] was "not consistent with the medical record." (Doc. 9-4 at 72) In doing so, the ALJ opined Plaintiff's hospitalization in March 2011 demonstrated that Plaintiff's mental condition was "exacerbated by longstanding substance abuse." (*Id.*) However, the ALJ fails to explain how Plaintiff's hospitalization in March 2011 undermines the mental limitations identified by Dr. Syed in January 2017—nearly six years later. The ALJ fails to identify any specific findings in the record regarding Plaintiff's mental abilities that contradicted the limitations identified by Dr. Syed in 2017. For example, the ALJ does not identify any objective evidence that Plaintiff could carry out short and simple instructions, or would have not marked limitations with interacting with the supervisors or co-workers. (*See* Doc. 9-4 at 72; Doc. 9-9 at 93) Similarly, the ALJ does not identify any conflicting evidence regarding Plaintiff's limitations with adaptation or ability to respond to changes in a routine work setting. (*See id.*) Notably, Drs. Patel and Pollack also believed Plaintiff had cognitive issues or below average intelligence, and would have difficulty with interacting with supervisors and co-workers. (*See* Doc. 9-4 at 9-10; Doc. 9-8 at 58-59)

Rather than identify evidence that conflicted with specific limitations identified by Dr. Syed the ALJ offered only a summary of the medical record and his conclusion that the record did not support the mental limitations identified. However, this conclusion "does not achieve the level of specificity [that] prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Because the ALJ failed to identify specific evidence that conflicted with the limitations identified by Dr. Syed, the ALJ erred in evaluating the medical record and rejecting the opinion of Plaintiff's treating physician.

2. Treatment notes

The Ninth Circuit determined an opinion may be rejected where there are inconsistencies within

---

[3] Notably, it is unclear whether the ALJ rejected the "marked to extreme limitations" identified by Dr. Syed, or the opinion that Plaintiff's "limitations are not related to drugs or alcohol"—or both. (*See* Doc. 9-4 at 72)

11

a physician's reports. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). However, it is an error to read a treating physician's notes "selective[ly]" rather than "in full and in context." *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001). The Ninth Circuit determined also that an ALJ cannot properly reject a treating physician's opinion as being "inconsistent" with his or her treatment notes if the "inconsistency" is only, for instance, that the claimant showed improvement during treatment. *Id.*

In *Holohan*, the ALJ rejected the treating physician's opinion that the claimant suffered from "marked" impairments with respect to "performance of any work activity due to anxiety/panic attacks and poor concentration." *Holohan*, 246 F.3d at 1204-05. The ALJ rejected the opinion as "totally inconsistent with [the physician's] own treatment notes and records . . ." *Id.* The ALJ stated the treatment notes "indicate[d] control of panic attacks" with medication; a "great improvement" in the claimant's condition; and the physician's finding that the panic attacks increased with inactivity, such that she was happy when she joined the YMCA. *Id.* Upon appeal, the Ninth Circuit found the ALJ erred in rejecting the treating physician's opinion on these grounds. *Id.* The Court found the ALJ was too "selective" in his reliance on the treating physician's notes, and "exaggerate[d]" the contents. *Id.* at 1205. The Court's review of the record confirmed that, while the treatment notes revealed the claimant was "doing better," her panic attacks were only "15% better." *Id.* Similarly, the physician never identified a "great improvement" in the claimant's condition. *Id.* The Court concluded the physician's notes "must be read in context of the overall diagnostic picture he draws," and "some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.*; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (citing *Holohan* and holding treatment notes reflecting a patient's "improvement" did not undermine the physician's repeated conclusions and diagnosis).

Likewise, it appears the ALJ engaged in a selective reading of the treatment notes. Without citing specific evidence, the ALJ observes that "the claimant reported less symptoms when he denied using substances." (Doc. 9-4 at 72) However, in June 2014, toxicology tests were negative for all substances, and Ms. Lara believed Plaintiff's symptoms impaired concentration, and poor memory. (Doc. 9-8 at 10, 11, 20) Later that month, Dr. Desai noted Plaintiff was not using drugs or alcohol, and

12

opined Plaintiff had a poor immediate, recent, and remote memory; below average intelligence; impaired ability to concentrate; and was inattentive. (*See id.* at 39) Indeed, the ALJ fails to identify any evidence in the treatment record that Plaintiff used drugs or alcohol when his treating physicians—including Dr. Syed—offered opinions regarding his mental limitations.

Moreover, the fact that Plaintiff's symptoms improved as the physicians prescribed more medication and adjusted his doses to until he was considered "stable" in February 2016 does not undermine the findings of Dr. Syed. *See e.g., Richardson v. Astrue*, 2011 U.S. Dist. LEXIS 132843 at *18-19, 172 Soc. Sec. Rep. Service 69 (C.D. Cal. Nov. 17, 2011) (observing the treatment notes indicated the plaintiff's condition was "stable," yet she had "an active disease which require[d] aggressive medications" and finding the ALJ erred by "improperly equat[ing] stability with functionality"); *Lule v. Berryhill*, 2017 U.S. Dist. LEXIS 19392, at *18 (E.D. Cal. Feb. 9, 2017) (finding the ALJ erred in evaluating the record because the stability of a condition alone does not support a conclusion that the claimant is "able to perform work for an eight-hour day").

**B.      Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify legally sufficient reasons for rejecting the mental limitations assessed by Plaintiff's treating physician, Dr. Syed, who indicated the limitations were due to

13

Plaintiff's paranoid schizophrenia. Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations and engaged in a selective reading of the treatment notes, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in her evaluation of the medical record related to Plaintiff's mental limitations and rejecting the opinion of his treating physician. Therefore, the Court should not uphold the administrative decision. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Miguel Vazquez and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **November 20, 2018**            **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE